Hey, guys! Have you read it, Counsel? May it please the Court, my name is Adam Mueller, and I represent Fernando Duran. Few drug cases make it to trial anymore in federal court, and few cases are as weak as this one. But at the outset, I want to note something and clarify something, which is that I'm not challenging the sufficiency of the evidence regarding the conspiracy count. I'm focused exclusively on the possession and distribution count and the attendance or corresponding facilitation counts. Thank you, Counsel. That was going to be my first question exactly, where were you going with the sufficiency question? Yes. I think the, you know, particularly in the absence of an overt act requirement under federal law, the evidence was sufficient in this case to prove conspiracy. But my contention, based on this court's decisions in Hall and Badgett, and even this court's decision in Marquez, which I grant is challenging for me when read together with the other two, is that the evidence was insufficient to prove possession and distribution of drugs on March 8th, which was the count of conviction, count number 22. And that's really for a simple reason, which is that no one saw any actual drugs at any time in this case. No drugs were sold or bought from my client. No searches were conducted. No controlled buys were conducted with my client. No money was exchanged. And all of that was true in Marquez. That was all true in Marquez as well. But the distinction in Marquez, two things I would note, I'm not sure Marquez is consistent with Hall and Badgett. That being said, this court is bound by Marquez and I certainly understand that. But Marquez, in that case, found direct evidence of possession from an admission by the defendant in that case to the present possession of drugs. Let me probe that. The quote, as I read it in Marquez, was not, I still have drugs. I still have cocaine. I still have the pronoun it. Correct. And so there was no explicit confession in Marquez that the defendant had illegal drugs. They had a pronoun, it, that one can maybe reasonably infer from that, drawing an inference that that was illegal drugs, but that was true in Badgett and Hall also. Right. Well, I think the key fact, the key word in Marquez is not it, it's still have, the words still have. It's the present possession of it. For the purposes of my sufficiency argument, I'm willing to assume that all the references in the calls here to Gooey Gooey and Raindrops are sufficient, are the equivalent of saying controlled substances. That's what the agent testified when he was giving the information about drug slaying. Correct. Yeah. And I'm willing to assume that it in Marquez referred to drugs as well. The distinction in Marquez was not that over the question, what does it mean? The distinction in Marquez as compared to Hall and Badgett was a plan in the future to buy drugs versus the present possession of drugs. So the word it, I think the result would have been the same if the person said, I still have the drugs or I still have Gooey Gooey, if there were testimony that Gooey Gooey meant drugs. Well, on March 8th, the statement was that Unk, the supplier, is there with the cocaine. Well, a couple of things on that, to the extent that Gooey Gooey means cocaine and it means then the March 8th statement was an admission that Unk was there with the cocaine. I don't think that's right, Your Honor. As interpreted by the government's own evidence, the expert in drug slaying and code, Gooey Gooey meant crack cocaine or the process of turning it into crack cocaine and Raindrops meant the same thing. It'd be a lot easier if somebody just convinced these drug people to speak. We could translate, we could understand that. It would shorten my brief as well considerably, although with the number of cases that affirmed the admission of the evidence, there's a reason I put that argument third in my brief. But as to Unk, it's not enough in this case that Unk is referred to the supplier, but there's no evidence that Unk is the supplier. We don't know who Unk is. Unk is a name. Unk is not a voice on a phone call ever recorded. Unk is not a person that can be identified. And so we're talking a few steps even removed from a direct admission to I still have it to Unk is here and he's happy and I won't use the language the call uses. And so I don't think, all things considered, that's enough to show direct evidence of possession. And even under Marquez's reading of Hall and Badgett, that's what's required. Direct evidence of possession. You need a statement from the defendant, a reliable, unequivocal statement is how Marquez talks about it. So you're not challenging that you can get a conviction without actual proof of drugs. You're simply challenging the government's lingo expert as to whether it was sufficient to result in a jury finding that this language was a explicit statement of current possession of drugs. I would modify that slightly, Your Honor. After Marquez, I have to agree that you can have a conviction sustained absent evidence of drugs. I have to concede that. Physical evidence. Physical evidence of drugs. Well, now you have the testimony going back to trial days. You have the testimony that the court allowed the jury to hear in regards to this matter. And I know you object. That's part of the issue that we have. I think you need to take me into that because following where Judge Ebell is with that, now you have witnesses, one identified as an expert, saying what that meant. And that would entitle, as I see it, the jury to take that and go with it and say that's the drugs that we're talking about. Right. And Your Honor, I agree that for the purposes of the sufficiency argument, that evidence was admitted and I have to accept that it was admitted, meaning the expert testimony interpreting the code. And I'm not arguing on my sufficiency argument that the evidence was insufficient to establish that they were talking about drugs. My distinction between Marquez is that in Marquez, the defendant admitted to the present possession of drugs. And here we don't have an admission from the defendant of that sort. And if we don't agree? And if we don't agree, then I think I lose the sufficiency argument. And that is what it is. But I think the language of the calls is crucial here because on the March 8th call, there are really two calls we're talking about on March 8th. There are five calls in total on March 8th. But we're talking about two. And that's exhibit 9A and 13A. Those are the transcripts of those calls. And on 9A, the defendant, my client, Mr. Duran, says Unk is here and he's, quote, happy as a expletive because Unk had raindrops drop tops. That's the reference to drugs on the first call. The second call, which is the last call of the day, is 13A, is the defendant, the co-defendant saying, yeah, I'm about to see that gooey gooey, that gooey gooey. And then my client says, yeah, right, expletive, that gooey, that gooey, says the co-defendant. The last call is important because that's an 18-minute phone call if you look at the transcript. There are two references, one exchange and two references to drugs in that 18-minute phone call. That's what we're basing this conviction off of are those two phone calls. And in all of those calls, what the defendant is doing is talking about future possession or possession by someone else. Well, I thought you just said Unk is here with the raindrops. Well, the raindrops is the cocaine, right? Well, the raindrops is the crack cocaine, according to the government's law. Right. So Durant says on the first call, the first thing he says is, Unk, whoever it is, somebody is there with cocaine, right? That is the present possession of an observable narcotic. Unk is here with crack cocaine, Your Honor. I think this distinction is important, actually, because what then Durant says later is, in that call, Birch, excuse me, Birch the co-defendant says to my client, what did Unk get? And my client says, raindrops, drop tops. Now, if the government's theory is correct, which they pressed below and pressed on appeal, which is that my client cooks cocaine into crack cocaine, that doesn't make any sense because it's already crack cocaine. In fact, that's what the government admitted in their closing argument. The government asked that March 8th call said, this exchange about Unk being here was virtually nonsensical. That's their quote about what it means. Because he was convicted of possession of cocaine on March 8th, not of possession of crack cocaine. And so if Unk is here with crack cocaine, and my client is in charge of cooking that crack cocaine into crack cocaine, it's already crack cocaine. And that's why the government admitted in closing, that doesn't make a whole lot of sense. It's virtually nonsensical. Wasn't there another sentence or something that could have been related to plain cocaine, uncooked cocaine? Or was that the only thing that was in that conversation? This is what he said. This is on Exhibit 9A. Unk is here for my client. Birch says, oh yeah. My client says, yeah. Birch says, that's crazy. My client says, happy as a mother. Then Birch says, what did he get? Referring to Unk. My client says, raindrops, drop tops. And then later my client says, all right, because I want you to raindrop it. And that's why it's virtually nonsensical. Because if you're raindropping something, i.e. under the government's expert, turn it into crack cocaine. When I read that, my thought was, when you say, why don't you raindrop it, if he didn't at that point have material to, if it was all already converted into crack, wouldn't he have said, what do you mean? Why don't I raindrop it? It's already crack, or it's already raindrops. Instead, he just let that conversation pass. So isn't there an inference that could be drawn that whether he had crack or not, he must have also had some uncooked cocaine at that point? I don't think that's a reasonable inference to be drawn, given that we don't have any evidence beyond the cause themselves. And that would be, in my opinion, yet another inference too far on the efficiency challenge. It is another inference. This question of how many you can pile on. Right. Is that an unreasonable inference, I guess, is my question. I don't think it is, and I don't think the government really thinks it is either, because they call this whole exchange virtually nonsensical. And if you read a lot of these transcripts, they are difficult, as Your Honor said, to understand. I have very little time, and I just wanted to briefly mention an evidentiary issue. Because I think the evidentiary issues are related in this case because of the weakness of the evidence of possession. And what you ultimately had here from case agents who began the testimony and was the second-to-last government witness to testify were personal opinions from these agents about the defendant's guilt, saying we determined, I believed, the task force determined. Those are not opinions that lay witnesses or expert witnesses, frankly, get to draw. Those are the jury's conclusions that the jury is allowed to draw. That's what Rule 704 says you can do. An expert witness can testify about the ultimate determination of fact for the jury. An expert witness can't, Your Honor. These witnesses were not qualified. Well, Peterson was. Peterson was, but he didn't testify. If you're talking about Fania or Rossi, that's a different matter. Right. And Peterson did not testify to the ultimate issue, Your Honor. He didn't offer any testimony that, in his view, my client was part of a conspiracy or was a drug dealer. He limited his testimony to interpreting the language. Agent Rossi and Fania were not qualified as experts, were not offered as experts, and they— Well, is that true about Fania? Because I thought Fania only testified about those three undercover buyers, and your only argument about Fania was that he was only testifying about Burch, not about your guy. I apologize if I misspoke about Fania saying Rossi. So it's only Rossi. Rossi was the second-to-last agent to testify in the case, correct? Right. And he, as I recall his testimony, talked in personal opinions about both himself and other members of the task force. I have very little time, so I'd like to reserve the time I have left unless this court has other questions. You bet. Counsel? Sorry. Counsel, members of the court, my name is Jim Murphy. I'm an assistant United States attorney in Colorado, and I represent the United States. Counsel, I know that I would like for you—I immediately, when I read this, I pulled up the jury instructions in this case, and systematically, because I had some concerns, show me the best evidence that you've got of the three things, that the defendant actually possessed a controlled substance, that he knew he possessed a controlled substance, and he intended to distribute or dispense controlled substance. Those are the keys that I've got in regards to this—not the sufficiency, but you have to admit it's kind of unusual when you don't have some drugs somewhere. And that's why—that's the burden, I think, that you had to carry at trial in this, isn't it? It is, Judge. Okay, so— We didn't have drugs on the table, and Mr. Mueller is correct. Now, in a conspiracy case, as he has already conceded, we don't need that. Yeah, that's correct. And that's not uncommon, but that's not the issue. This was a distribution— It might not, but I'm reluctant, because I haven't sorted it out. Okay. That's why I'd rather you just— It would have to go back to the district judge, and they can sort that out. All right. It's difficult. There's some contingencies here, depending upon what the decision were to say. But it is unusual in a distribution case for the government not to have drugs on the table at trial. I concede that. However, it is also unusual to have wiretap interceptions that are as explicit as these, where they're not talking, as in Hall, Baguette, and Bryce's decision from the Second Circuit. They're talking about planning, in most of those cases, planning to buy drugs. And there was not adequate evidence, surveillance or otherwise, to suggest that anything ever came to fruition. That is not the case here. These transcripts are abundantly clear. They're talking about bringing the drugs. Duran is very happy about that. Burch says—Duran says to Burch, I want you to raindrop it. All of which, as you said, might be relevant to a distribution count. And you just said it's not a distribution count. It's a possession, yes. Count 22 is a possession with intent to distribute. Yes. And so Baguette and Hall specifically say that unless you have direct evidence of an observable narcotic, the evidence is going to be insufficient. So how do you survive, Baguette and Hall, on a possession count? With all of the evidence of intent to distribute in the world. That was true in Baguette and Hall as well. That won't get you a possession. It does, Judge, under the facts of this case. This is very different than Hall and Baguette. Well, where is the direct evidence that Mr. Duran had an observable narcotic, as was the case in Marquez, where our panel specifically said that there was direct evidence of present possession? And that evidence was the wire interceptions themselves that made clear he had the stuff. Unk had the stuff. Well, and Duran had it. Where? Which part of the— Go ahead. Well, okay, but I want you to be specific. I will. So which part of the March 8th recorded calls specifically said that Duran had the drugs that Unk had come with? He said, I want you to raindrop it. That suggests that he has it. And in addition, of course, to the expert testimony about what they were really talking about, in this case we have later calls after March 8th where the men are intercepted talking about the cocaine that Birch had made. And they talk about how much they had left. And surveillance, just going back to March 8th, observed the men meeting. That didn't exist in the other cases. Well, you say maybe he had evidence, he had the drugs later. Well, he was also charged in Count 24 with possessing narcotics on March the 11th. Yes. And the jury acquitted him of crack cocaine. Right. The jury acquitted him of that, which actually shows the jury was paying close attention to this. And they weren't convinced on March 11th that Duran had crack cocaine. They were very convinced that on March 8th he had powder that he met with Birch, that an exchange took place. And that's the inference. I agree— Well, that's the point. But it's really one inference, Judge. What? It's not compounding inferences. The wire is direct evidence. Surveillance, excuse me, is direct evidence. We do have an inference that when the two men met, as surveillance observed on March 8th, that cocaine powder passed pans. So do you conceive, Mr. Murphy, that on March 8th, to convict on Count 22, that there was a requirement that the jury draw an inference? Yes. And didn't Bagot and Hall specifically say that if the presence of an observable narcotic requires an inference, the defendant gets acquitted? There's insufficient evidence of possession in both Bagot and Hall because it required an inference, which by definition is not direct evidence. I don't think the cases went that far. And Marquez explicitly rejected that interpretation and said the interceptions themselves on the wiretap, if they are sufficiently expressed— and this all is very fact-specific. I give the court that. It comes down to the facts of a particular case. But if those wire interceptions are sufficiently specific about the possession of drugs and the transfer of drugs, that is direct evidence in itself sufficient to show possession. Although, as the court knows, ultimately what to make of these, we need a certain quantum of evidence, I concede, but it's up to the jury ultimately to decide what all of this means. And I suggest the reasonable jury, looking at all of these extremely explicit conversations about making crack cocaine, raindropping it, drop tops, apparently from a rock saw or a rap saw. I didn't know that. But the jury heard all of this too. And that's direct evidence also. So is there just a conflict between Bagot and Hall and Marquez? I don't think there is, Judge. On the surface, it seems like there is. But Marquez didn't reject them. They just said, well, our facts are different. Our wiretap is different. And we think that this is sufficiently explicit in Marquez that a jury could draw an inference of possession. But Bagot and Hall preceded Marquez, right? Yes. And we have law that if there is a direct conflict between cases, we have to take the earlier 10th Circuit case, not the later one. Of course. Contrary to what the Supreme Court, if you take the later Supreme Court case, we take the earlier of the appellate case. Well, that's because the Supreme Court doesn't have stare decisis. Right, right. Yes. I understand, but I don't really think that Marquez intended to go off on a different path than Hall and Bagot. Well, he couldn't. They distinguished the facts, Judge. That's the way I read Marquez. And how did they distinguish those facts? How did they distinguish Bagot and Hall that doesn't also hurt you here? They said that in those cases, there was planning to buy drugs, but there was no surveillance or follow-up or suggestion that that ever happened. See, isn't the key to those two cases that they were talking about? The statement by the defendant was, I am going to have these drugs for a trade at a certain place. It's a future prediction. And we've said that that's not enough. But in Marquez, there was actual then-possessed drugs, in our cases, then-possessed drugs. And so isn't that the distinction you're trying to draw? Yes, I think that's a valid distinction. Is there any other distinction you would propose? No, I think the distinction between intending to possess drugs and possessing them is a valid one. Because lots of things can go wrong with your executing your intent, particularly in the drug business. It could never happen. But it happened here. This isn't a buyer-seller thing. A meeting took place. In Bagot and Hall, the guy didn't say, I've got them right now. He says, I'll meet you and make a trade tomorrow or the next afternoon or I can't remember the time. And there's no evidence that ever happened. Here there's evidence it happened. There's surveillance that saw the meeting. And the explicit nature of the conversation is very different than Hall and Bagot. So tell me how you would draw a distinction between Bagot and Hall and Marquez if you were having to write it. I would indicate that the evidence here is much more similar to that in Marquez. That there was evidence of an actual meeting. Surveillance observed it. Later wiretap interceptions seemed to confirm that drugs changed hands. And I think it was Birch. One of them was saying, well, how much do you have left? And one of them, perhaps it was Duran, was saying, oh, I've got half a heezy. And Agent Peterson said half. Or heezy means not half a heezy. I have a heezy. That's what he said. Or a higgity. And Agent Peterson told the jury, based upon my extensive experience, that means half of something here, probably half an ounce left. We have future interceptions on the 11th after the meeting observed by surveillance on the 8th about what they did on the 8th, which was when Duran gave the powder to Birch and Birch raindropped it or turned it into crack cocaine. All these facts, Judge Baldock, make this very, very different than Hall and Bagot. I think the facts here are even more favorable than Marquez. Just to allow a reasonable inference of possession. Well, Marquez, and I pulled the transcript in Marquez. And Marquez in the recorded call said, I know there's no pressure. I still have it. I know you don't need it. Good thing you had another one. But same old thing, bro. Expletive. Do you have? Are you quoting Marquez? This is in Marquez. Okay. So you're relying on Peterson to interpret the coded language, okay? Well, we have two people. Yes, but he's one. And Rossi. But without Rossi or Peterson interpreting this coded language, do you agree that you don't have anything that's the equivalent of what Marquez said in the recorded call? That is actually quoted by our panel in Marquez. I still have it. You have the recorded call of March 8th that Unk had raindrops. And let's assume that raindrops is cocaine or crack cocaine. So Unk had the illegal substance. But do you concede that you don't have any evidence outside of Rossi or Peterson's testimony in the recorded calls that Duran on March 8th had an observable narcotic in his possession? I think that the wiretap conversations, which are explicit and detailed on their own, are sufficient direct evidence that on the day in question Duran did in fact have possession. Yes, he planned to get – he was happy that Unk was here because, you know, because Unk was bringing the stuff. But I think the conversations, which are very detailed, are sufficient on their own to conclude that Duran did have the stuff. Because if he didn't, there was no reason for him to meet with Birch. And the conversations intercepted on the 11th about what they had done and about how Birch had raindropped it and about how, you know, a certain amount was left, a heezy or a higgity was left, really wouldn't make any sense. Well, let me ask you – and I'm sorry to monopolize so much time – but you keep in your brief, you did it too, referring to Birch's part of the conversation on March 8th and March 11th. Why does – Birch is not the defendant. Shouldn't we exclude any references that Birch had made and focus solely on the statements that Duran had made? At least under the rubric of Baggett and Hall. You know, how – why not? No. The jury cannot reasonably interpret what was going on without listening to both sides of the conversation. It's part of one conversation. This is the possession with intent to distribute and the distribution. So none of – it's true that none of this makes sense without considering the entire conversations. And by the way, that's what the prosecutor meant in closing. He wasn't saying it makes no sense. He's saying, listen to them. This language is cryptic. I mean, raindrops, drop tops, what are they talking about? Well, on a surface, folks, it doesn't mean much. But Agent Peterson and Officer Rossi told you exactly what those terms mean. And once you understand that testimony, it all comes into focus and it makes perfect sense what was going on here. That's what the prosecutor meant. Was there any argument that there was constructive possession by Duran when he said Unk is here with the raindrops? That was not argued in the brief intentionally. Was it argued below? Intentionally it was not. I don't believe. You're attributing attention to your opponent, which is a risky thing to do. No, no, I mean me. Yeah. I'm sorry. Yeah. I didn't argue that for a reason because that's not our theory. You never made that argument below. I don't recall that they did. And I don't recall – sorry. I don't recall if there was a jury instruction on constructive possession. I knew at one time. And I made a conscious decision not to argue that because that's not our position. Our position is he had the stuff, but he did a deal with Birch. And that was the argument below. But the only statement about present possession was that Unk is here with the raindrops. No, Judge, there's a great deal in the wiretap suggesting they have it. You better bring me something. I want you to raindrop it. I got to put that ship in the water. All of this, again, they repeatedly refer to it and to bringing me something and then the men meet. And then on the March 11th interceptions, it's clear that some of that stuff, the hard – I forget. There are so many references and so many code words here. Hard, heasy, higgity, raindropping things. But it's very clear, taking all these interceptions, that they talked about Duran getting the stuff from Unk. Birch was going to raindrop it. They meet. Surveillance notes that. And then in later wire interceptions, they talk about how much they have left. The wire transcripts are just so explicit. There's really no other interpretation of them once you know what some of these terms mean, as the agents explained. But you have to rely on one day here. You're talking about March 8th. And the later interceptions on March 11th. All of this was before the jury. So you say there's all this conversation. Yeah, there's other conversation on February 7th. But on March 8th is what we have to look at. Unk is here. Happy. Where did he get raindrops? It's super. Yeah. You off work? No. Where are you going to be at? I'm in the hood. And then other conversations about getting lost. And then I'm tired. A little bit more obscenity. We're about to see some work. About. I'm about to see gooey gooey. That's all future. I don't see in March 8th any statement where Duran says I have drugs. I just don't see it. And I've got to find it on the March 8th transcript. I can't find it on the other transcripts because the March 8th is a very specific date for possession. Correct, Judge. But the jury was free to consider all of the evidence in deciding whether on March 8th he possessed it. But the only evidence you got is this transcript. And I don't see how any reasonable juror limited on. I mean, he could be guilty as could be about drug transactions. That's what all this other stuff is all about. But for the particular charge of possession on the 8th, the only reference is I am about to see that gooey gooey. There are many other references. And Birch says that. And that Unk is here. I mean, I am at least persuaded that our later case of Marquez doesn't require actual possession proof of the drugs if the defendant has made an explicit statement that he then at that instant had them. But I just am not sure that that transcript for that day says he had it as opposed to Unk having it. And if you don't allege constructive possession or conspiratorial possession with Unk about that, I am troubled. Well, Judge, as I've already indicated, the question is whether he possessed it on March 8th. But the jury was fully entitled to consider all of the evidence, including the later interceptions, where they discussed the transfer and the crack cocaine that Birch made based upon the transcript. Could none of those later transcripts say that they were made on March 8th? No, but it's perfectly clear in context and there's a reasonable inference that that's all what happened. I mean, these are quite reasonable. You can't just focus on one statement, Judge. These wire transcripts, there are many of them. And taken as a whole, I think a jury reasonably can't conclude. It's not just the wire transcripts. It's also the surveillance and the explanations by the agents that on March 8th, indeed, when the two men met under the watch of surveillance that Duran passed powder cocaine to Birch, he raindropped it or cooked it in a crack, and then they talk about it a couple of days later. What did the surveillance say specifically about March 8th that said that Duran had possession that day? They just observed the men meet as they had agreed to on the wire tap so that Birch could raindrop it. No, they didn't observe drugs. I agree. I can see that point. But I think a reasonable jury under all of these facts can conclude that on March 8th, Mr. Duran possessed cocaine. I think this is entirely consistent with the holding of markets. Okay. Thank you very much. Thank you, Your Honor. I just have a few points I'd like to make. Judge Ebell, you asked about constructive possession. There wasn't a constructive possession instruction given. There was? There was. That's why I'm confused with his statement. Right. So there was a constructive possession instruction given. It was objected to. But there was no argument either below, and there's an intentional decision not to argue on appeal. Well, in fact, he said he's not relying on it, so I guess we can put it aside. Right. I think you can put it aside. And I don't think the government's theory below was ever that my client was responsible for drugs possessed by Unk, whoever Unk was. And in addition, even if that were an argument to consider, we don't have a statement by Unk saying, I presently have the raindrops. So we don't even have that type of statement that can be attributed to Unk like the I still have it statement in Marquez. And that's what this boils down to. I think Marquez is hard to reconcile with Badginton Hall. But to the extent you can reconcile it, it says in the absence of observed drugs, you need direct evidence of possession. And the direct evidence there. At that time, current. Exactly. Present possession. And I still have it was present possession. We don't have that here, either as to Unk, whoever that may be, or as to Mr. Durant. And for those reasons, I think the evidence was insufficient. And if you look at Hall and Bryce, I'll just say this briefly. There were actual confirmed buys and drugs in those cases outside the date charged. And that was still insufficient. We don't even have Mr. Durant in possession of drugs outside of March 8th. We don't have it ever. And he doesn't admit to it on March 8th. So unless the court has other questions, I see my time is up. I have a question that is an aside. Assuming with what we have and the issue that's raised here and the convictions that still stand, even if we agree with you, is the outcome possibly at the sentencing going to be any different than what it is now? The sentences on these counts were all concurrent. They were all the same length, 42 months or 46 months, I can't recall, on each of the four counts concurrent. So were this court to reverse the conviction on the possession count and, as I argued, the other two facilitating counts as well, there's still one conviction with a 40-some-odd-month sentence. I think even absence-sufficient evidence-relevant conduct would likely end us back in the same place. I don't expect that Judge – I wasn't the trial attorney. I can't say what Judge Jackson would do were the sentence informed again, but the conviction would survive. But just to follow up on that, though, wouldn't we have to remand to give Judge Jackson the chance to resentence once we strike a sentence? Or can we say on the sentence we see we can determine that it wouldn't make a difference and we can grant you relief, but just – I think it's fair to say that it wouldn't make a difference in this case, Your Honor. In a different case, I might ask for a remand. I also think time – frankly, by the time my client is already served with pre-sentence confinement credit, I would have to check. But he's more than halfway through. I think the practicality is that he might be – he might have finished his sentence by the time this case is resolved and the mandate issues were not to go anywhere else. So it would be just as easy from your point of view also, just so that he didn't have – takes one less conviction on his record for any future personal history counts. Exactly, Your Honor. So you're saying that if we reverse on count 22, then you're foregoing any request to us to remand for resentencing? Your Honor, I should be careful. I should say I should ask – in protection of my client's interests, I should ask for that remand. Were this court to read the sentencing transcript and conclude that Judge Jackson considered all these in isolation and would impose the same sentence, I think the court probably could do that. For the record, I would certainly ask for the remand in defense of my client's interests, but I'm not sure ultimately it would matter. Let me ask you one question about counts. There hasn't been much discussion about counts 35 and 36. On 843B, it doesn't require an underlying felony that's to be committed by the defendant, right? No, it requires that – A felony to be committed by someone. Is committing by the defendant or commission of – excuse me – commission of by someone else correct? And you haven't denied that there was sufficient evidence with regard to Birch's commission of a felony, right, on March 8th and March 11th? I have not in my briefs, Your Honor. And so if Mr. Duran made a telephone call to facilitate Mr. Birch's commission of a felony on March 8th or March 11th, there would be sufficient evidence on counts 35 and 36, correct? If – yes, from an abstract perspective, I think there would be. I don't think that's ever how it was argued in this case. Well, you're the appellant. Yes. I mean, it was argued below. I apologize. I don't think the government ever argued that Mr. Duran was facilitating something by Birch. The theory was always that Mr. Duran was Birch's supplier. Well, but if we read the transcript and say that there is sufficient evidence for a jury to reasonably conclude that Mr. Birch was committing a felony on March 8th and a felony on March 11th, and Mr. Duran made a telephone call, and if we conclude that Mr. Duran made telephone calls on March 8th and March 11th to facilitate Birch's commission of a felony, it doesn't matter what the government argued in closing. I see your point, Your Honor. I would have to go back and review the transcripts of March 8th and March 11th to see whether Birch makes any statements amounting to present possession. Well, I mean, you're not going to say that Magan and Hall, for an 843B charge, requires that there is direct evidence of an observable narcotic by a third party. No, I agree that there doesn't have to be observable substance for a conviction under 843B. My point is simply that the only underlying felonies that Mr. Birch could have been deemed to have committed for purposes of 843B would be the same charges we're talking about for Mr. Duran. Well, I thought you, about 50 minutes ago, you conceded that there was sufficient evidence of conspiracy, right? Yes. Well, if there was sufficient evidence of conspiracy by Duran, there was sufficient evidence of conspiracy, presumably, by Mr. Birch. I apologize. I thought we were talking about possession as opposed to conspiracy. Well, so on 843B, if there were telephone calls to facilitate Mr. Birch's commission of a felony conspiracy, then you lose on counts 35 and 36, right? I want to say no. Yes. My only hesitation, Your Honor, is that I haven't looked into whether conspiracy for some reason might not qualify as an underlying felony. I just haven't researched that. After consulting with your client, would you provide us a written statement? We're not asking for a so-called brief or argument, but whether or not, if we were to reverse on count 22, if he would still want us to remand for resentencing or not. Yes, Your Honor. Would a letter be appropriate addressed to Ms. Shoemaker and filed on scene? That would be fine, of course. Yes, of course. Copy to the counsel for the audience. Two weeks from today. Great. Thank you. Thank you. This matter is submitted. I think both counsel did an excellent job in your briefs and in argument today. Thank you.